## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

KARA BROWN, et al., for herself and
others similarly situated,

                    Plaintiffs,

      v.

ZIKS HOME HEALTHCARE
SOLUTIONS, LLC, et al.,

                Defendants.

:
:
:
:
:
:
:
:
:
:

Case No.: 3:18-CV-350

Judge Michael J. Newman
Magistrate Judge Peter B. Silvain

---

## THE PARTIES' JOINT MOTION FOR PRELIMINARY
## APPROVAL OF CLASS ACTION SETTLEMENT AND
## CERTIFICATION SETTLEMENT CLASS

---

Named Plaintiff Kara Brown ("Named Plaintiff") and Defendants Ziks Home Healthcare Solutions, LLC, Ziks Home Healthcare, LLC, and Nnodum Iheme, individually, (collectively, "Defendants") (collectively hereinafter the "Parties"), by and through their undersigned counsel, hereby jointly move the Court for entry of an order (1) preliminarily approving a class action settlement pursuant to Fed. R. Civ. P. 23(e); (2) preliminarily certifying Plaintiffs' claims under the Ohio Minimum Fair Wage Standards Act, O.R.C. 4111.01, *et seq*. ("the Ohio Wage Act"); and the Ohio Prompt Pay Act ("OPPA"), Ohio Rev. Code § 4113.15 (the Ohio Wage Act and the OPPA will be referred to collectively as "the Ohio Acts"), as a settlement class under Fed. R. Civ. P. 23; (3) appointing Plaintiffs' counsel as class counsel pursuant to Fed. R. Civ. P. 23(g); (4) approving the form, content, and manner of notice to the proposed settlement class; and (5) scheduling a final approval hearing.

As explained in the accompanying memorandum of law, the Parties have reached a settlement in which Defendants will make payments to current or former employees (the "Settlement"). In addition to Named Plaintiff, 51 Opt-In Plaintiffs have already joined this action and (Named Plaintiff and Opt-In Plaintiffs are collectively referred to as "Plaintiffs"). The settlement class will include 87 current and former employees of Defendants who were employed at Defendants at any time between October 31, 2016, and January 17, 2023, and who allegedly failed to receive overtime pay for working more than 40 hours in certain workweeks.

The Parties also jointly request that the Court preliminarily certify a Fed. R. Civ. P. 23 class consisting of all class members solely for the purposes of settlement. To that end, the Parties agree that the numerosity, commonality, typicality, and adequacy requirements of Fed. R. Civ. P. 23(a) are satisfied and that the class claims meet the requirements of Fed. R. Civ. P. 23(b)(3). The parties further agree that Plaintiffs' counsel should be appointed as class counsel pursuant to Fed. R. Civ. P. 23(g). Finally, the Parties agree that the proposed form, content, and manner of notice to the settlement classes is reasonably calculated to give adequate notice of the settlement and an opportunity to object to it or opt out of it.

WHEREFORE, for the reasons set forth above and in the memorandum of law in support of this motion, the Parties jointly request that the Court enter an order:

1. Preliminarily approving the Settlement as fair, reasonable, and adequate under Fed. R. Civ. P. 23(e);

2. Granting certification pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) of a settlement class as defined by the Parties in the accompanying memorandum;

3. Appointing Bradley L. Gibson as class counsel pursuant to Fed. R. Civ. P. 23(g);

4. Approving the form, content, and manner of the notices to the proposed Settlement Class; and

5. Setting a final approval hearing on a schedule consistent with the Parties' Settlement Agreement and the Court's calendar.

**TAFT STETTINIUS & HOLLISTER, LLP**

By: /s/ Timothy G. Pepper (email authority)
Timothy G. Pepper, Trial Attorney
TAFT STETTINIUS & HOLLISTER LLP
40 N. Main Street, Suite 1700
Dayton, Ohio 45423
Telephone: (937) 641-1740
Facsimile: (937) 228-2816
pepper@taftlaw.com

*Attorney for Defendants*

**GIBSON LAW, LLC**

By: /s/ Bradley L. Gibson
Bradley L. Gibson (0085196)
Gibson Law, LLC
9200 Montgomery Road
Suite 11A
Cincinnati, OH 45242
Telephone: (513) 834-8254
Facsimile: (513) 834-8253
brad@gibsonemploymentlaw.com

*Attorney for Plaintiff Kara Brown and all Opt-in Plaintiffs*

## MEMORANDUM IN SUPPORT

### I.   PRELIMINARY STATEMENT

The Parties' Motion for Preliminary Approval of Class Action Settlement and Certification of Settlement Class contemplates the settlement of a class action lawsuit brought by Named Plaintiff Kara Brown ("Named Plaintiff"), on behalf of herself and those similarly situated, and Defendants Ziks Home Healthcare Solutions, LLC, Ziks Home Healthcare, LLC, and Nnodum Iheme, individually, (collectively, "Defendants") (collectively, "Parties").  Named Plaintiff, on behalf of herself and those similarly situated, filed her Collective and Class Action Complaint on October 26, 2018, against Defendants and alleged that Defendants failed to pay employee home healthcare aides ("HHAs") the legally required overtime wage amounts in violation of Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, the Ohio Minimum Fair Wage Standards Act, O.R.C. 4111 *et seq.* ("the Ohio Wage Act"); and the Ohio Prompt Pay Act ("OPPA"), Ohio Rev. Code § 4113.15 (the Ohio Wage Act and the OPPA will be referred to collectively as "the Ohio Acts").  (See ECF Doc. #1).  Specifically, Named Plaintiff asserts, on behalf of herself and those similarly situated, that Defendants unlawfully paid the HHAs by paying them straight-time wages for hours over 40 worked in a workweek, as opposed to overtime premium payment of one-and-a-half times their regular rate of pay.  (Id. at ¶¶27 – 29).  Named Plaintiff also asserts that Defendants failed to include the HHAs' time in between caring for patients (e.g., drivetime) in determining the HHAs' hours worked each workweek, resulting in Defendants failing to pay HHAs all the overtime hours the HHAs worked each workweek.  (Id.).

Named Plaintiff filed Plaintiffs Motion for Conditional Class Certification and Court-Supervised Notice to Potential Opt-In Plaintiffs on February 11, 2019, which Defendants did not oppose and the Court granted on April 5, 2019.  (See ECF Doc. #11).  Fifty-one of the HHAs opted

into this litigation by filing their consent forms, thereby becoming party plaintiffs. (See ECF Doc. ## 14 - 21).

The Parties have engaged in extensive, time-consuming litigation so far in this matter. Defendants have produced hundreds of pay records for the Named Plaintiff, Opt-In Plaintiffs, and other putative class members, as well as redacted patient records showing the hours Named Plaintiff, Opt-In Plaintiffs, and other putative class members worked. Plaintiffs' class counsel was able to use that information to calculate a reasonable settlement demand on behalf of the proposed class.

The Parties engaged in mediation on December 8, 2023, with the assistance of Magistrate Judge Ovington serving as the mediator. During the mediation, the Parties came to a settlement agreement as set forth in the Settlement Agreement. The Settlement Agreement requires Defendants to pay a total settlement amount of $65,000.00, which is almost the entire amount of unpaid overtime Plaintiffs' class counsel has calculated owed to the Named Plaintiff, Opt-In Plaintiffs, and other putative class members.

The Parties respectfully request the Court to enter an order that: (1) preliminary approves the settlement as fair, reasonable, and adequate under Fed. R. Civ. P. 23(e); (2) grants certification pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) of a settlement class as defined by the Parties below; (3) appoints Bradley L. Gibson, as class counsel pursuant to Fed. R. Civ. P. 23(g); (4) approves the form, content, and manner of the notices to the proposed Settlement Classes; and (5) set a final approval hearing on a schedule consistent with the Parties' Settlement Agreement and the Court's calendar.

## II.    RELEVANT PROCEDURAL AND FACTUAL BACKGROUND

### A.    Plaintiffs Assert Unpaid Overtime Wage Claims

Plaintiffs are HHAs for Defendants who worked for Defendants during some point between October 26, 2015, and January 17, 2023.  As HHAs, Plaintiffs provided companionship services, domestic care, home care, and other in-home services. (ECF Doc. #1, ¶33).   Defendants Ziks Home Healthcare Solutions, LLC, and Ziks Home Healthcare, LLC, are businesses that provide companionship services, domestic care, home care, and other in-home services to customers.  (Id. at ¶¶22, 34).  Plaintiffs allege that Defendants failed to pay them the required overtime premium under the FLSA and the Ohio Wage Act by paying them straight-time for certain hours over 40 hours worked each workweek, and by not paying them for time in between caring for patients that resulted in unpaid overtime amounts.  (Id. at ¶¶27 - 29).

### B.    Parties Engaged in Significant Discovery and a Mediation.

Named Plaintiff filed a Motion for Conditional Class Certification Court-Supervised Notice to Potential Opt-In Plaintiffs on February 11, 2019.  (ECF Doc. #11), which the Defendants did not oppose and the Court granted. Notice was mailed to the potential FLSA collective action members, with 51 of the employees of Defendants opting into the Litigation by filing consent forms, thereby becoming party plaintiffs.  (See ECF Doc. ## 14 - 21).

Plaintiffs served written discovery requests on Defendants. (Bradley L. Gibson Declaration, ¶12 ("B. Gibson Dec., ¶__")).[1] Defendants responded to Plaintiffs' written discovery requests by producing hundreds of pay and time records for the Named Plaintiff, Opt-In Plaintiffs, and putative class members. (Id.). The documents Defendants produced provided Plaintiffs' class

---

[1] Attached hereto as Exhibit A is the Declaration of Bradley L. Gibson.

counsel significant information, including but not limited to, showing their hours worked and the pay they received.  (Id.).  Defendants also produced documents showing when Plaintiffs cared for patients.  (Id)  Plaintiffs' class counsel was able to use those records, along with their meetings with the sample Opt-In Plaintiffs, to calculate a demand on behalf of the class of HHAs.  (Id.).

On December 8, 2023, the Parties engaged in a mediation with Magistrate Judge Ovington serving as the mediator.  (Id. at ¶13).  The Parties reached a settlement of this litigation during the mediation based upon the stated terms and conditions, which are set forth in this Settlement Agreement[2] that resolves all claims asserted in this lawsuit.  (Id.).  Based on their extensive investigation, Plaintiffs' counsel is of the opinion that the terms set forth in the Settlement Agreement are fair, reasonable, adequate, and in the best interest of the class and collective in light of the risk of significant delay, cost and uncertainty associated with litigation, including Defendants' defenses.  (Id. at ¶14).

C.  **Terms of the Settlement Agreement**

The Settlement Agreement provides substantial relief for Defendants HHA employees, who worked over 40 hours in any workweek during the relevant period and did not receive overtime premium pay for those hours worked.  Plaintiffs' counsel determined that after review of the records, Defendants failed to pay 87 HHA employees overtime premium pay for the hours over 40 hours the 87 HHA employees worked.  (Id. at ¶15).

The Settlement Agreement provides that Defendants, without conceding the validity of the Plaintiffs' claims and without admitting liability, will create a total settlement fund of $65,000.00

---

[2] Attached hereto as Exhibit B is the Class Action Settlement and Release Agreement.

("Settlement Fund") to resolve the Litigation. (Settlement Agreement, ¶19; B. Gibson Dec. ¶13). The Parties agree that a settlement class should be certified as a Rule 23 class, as defined below:

> All current and former employees of Defendants who have worked as direct support professionals, support associates, caregivers, home health aides, or other employees who provided companionship services, domestic services, home care, and/or other in-home services, and who worked over 40 hours in any workweek beginning October 31, 2016 through the present, and were not paid time and a half for the hours they worked over 40 (the "Settlement Class")

(Settlement Agreement, ¶5).

The Settlement Fund will provide Settlement Class Members with their pro rata share of damages resulting from Plaintiffs' claims made in the Litigation, including unpaid overtime damages. (Id. at ¶21). The Settlement Fund represents almost 80% of the maximum unliquidated unpaid overtime damages calculated by Class Counsel. (B. Gibson Dec., ¶16). Defendants dispute the maximum alleged unpaid overtime damages calculated by Class Counsel and instead believe that the total settlement fund exceeds the maximum recoverable damages in the Litigation. Defendants particularly dispute Plaintiffs' claims for unpaid overtime damages based on Plaintiffs' claims that Defendants failed to include the Plaintiffs' time in between patients as part of the Plaintiffs' compensable time.

Although 4 of the settlement payments will be at the agreed upon minimum amount of $50.00 due to the pro rata share (based on the number of unpaid overtime hours the employee worked), the remaining 83 settlement payments exceed this amount with the highest payment in excess of $1,779.57. (Id.).

In addition, the Settlement Agreement provides for a modest collective and class representative enhancement payment to the Named Plaintiff for her efforts assisting Plaintiffs' counsel with the litigation. (Settlement Agreement, ¶23). Specifically, Named Plaintiff will

receive an enhancement payment of $2,500.00. (Id.). Named Plaintiff has assisted in the prosecution of the Litigation by providing extensive factual information to Plaintiffs' counsel, attending mediation, providing sworn statements, and otherwise providing material information to Plaintiffs' counsel above and beyond the normal course. (Id.).

As for attorneys' fees and costs, Plaintiffs request attorneys' fees in the amount of 1/3 of the total common fund of $65,000, or $21,617.55 ("Class Counsel Award"). (Settlement Agreement ¶24; B. Gibson Dec. ¶21. The Class Counsel Award will be approved by the Court in its final order approving the settlement. (Settlement Agreement, ¶24). Plaintiffs' costs associated with the prosecution of the Litigation will be paid after deducting 1/3 of the Settlement Fund for attorneys' fees and will be made in addition to the Class Counsel Award (Id.). Finally, Defendants have agreed to distribute communication to the HHAs concerning the Settlement Agreement (attached as Exhibit 3 to the Settlement Agreement). (Id. at ¶27).

### D.    Notice Procedure

The Settlement Agreement provides for notice to be issued to the Settlement Class (Settlement Agreement, ¶¶26 - 27). The Notice of Collective and Class Action Lawsuit Settlement is attached as Exhibit 3 ("Settlement Notice"). The Settlement Notice shall inform the Settlement Class members of the pendency of this lawsuit; the terms of the proposed settlement; the amount of their individual settlement payments; their right to opt out of the settlement or object to it; and the date of the Final Approval Hearing. (Id. at ¶25). Within 24 days after entry of an order approving the notices, Plaintiffs' counsel shall mail the Settlement Notice, as approved by the Court, by First Class U.S. Mail to the putative members of the settlement class. (Id. at ¶¶ 26 - 27). Following the mailing of the notices, the putative members of the Settlement Class will have 45 days from the date of mailing to submit any objections to the settlement or to opt out of the settlement. (Id. at ¶25).

The Parties will file a motion for final approval within 14 days after the close of the opt-out and objection periods. The Parties request that the Court schedule a Final Approval Hearing 21 days after the close of the opt-out and objection periods. (Id. at ¶ 33). If the Court grants final approval, the claims of all Settlement Class members who did not opt out of the lawsuit will be dismissed with prejudice, the Settlement Class members will release the wage and hour claims described below, and they will be mailed their proportionate share of the Settlement Fund by Plaintiffs' counsel. (Id. at ¶¶ 25, 29). The Settlement Class members who do not opt out of the Settlement will release Defendants from all federal and state wage-and-hour claims, rights, demands, liabilities, and causes of action of every nature and description, including but not limited to those claims for unpaid minimum wages, unpaid overtime compensation, liquidated damages, interest, attorneys' fees and expenses alleged in the Litigation, whether known or unknown, pursuant to the FLSA, the Ohio Minimum Fair Wage Standards Act O.R.C. 4111.03-4111.08; and the Ohio Prompt Pay Act, O.R.C. 4113.15 for the Released Period. (Id. at ¶ 7 and 32). The Settlement Class members who do not opt out of the settlement will be issued individual settlement payments by the Parties in the form of a "Settlement Check." (Id. at ¶30).

## III.   LAW AND ARGUMENT

Insofar as the Settlement Agreement proposes to settle claims brought under the Ohio Acts as agreed to between the parties, the settlement is subject to approval by the Court under Fed. R. Civ. P. 23(e). As explained below, approval is warranted.

### A.   **Preliminary Approval of the Settlement Under Rule 23(a) and (b) is Appropriate**

#### 1.   **Certification of the Settlement Class is Appropriate**

A proposed settlement class must satisfy the requirements of Fed. R. Civ. P. 23. UAW v. General Motors Corp., 497 F.3d 615, 626 (6th Cir. 2007), citing, Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620 (1997). The proposed Settlement Class satisfies those requirements.

The proposed Rule 23 Settlement Class meets the requirements of numerosity, commonality, typicality, and adequacy of representation set forth in Fed. R. Civ. P. 23(a). Senter v. General Motors Corp., *532 F.2d 511* (6th Cir.), cert. denied, 429 U.S. 870 (1976); UAW v. General Motors Corp., 497 F.3d at 626. The proposed Settlement Class, consisting of approximately 87 members, is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a).

The Plaintiffs assert that there are questions of law or fact that are common to the Settlement Class. For example, legal conclusions regarding whether or not the time the HHAs spent between caring for patients is compensable and whether or not the HHAs were entitled to overtime premium pay are common questions of law that apply to the entire class, which could decide whether or not Defendants properly paid the HHAs under the Ohio Acts. The claims of the Plaintiffs are typical of a Rule 23 settlement class. The Named Plaintiff is an adequate representative given that she has common interests with the Settlement Class members. Rutherford v. City of Cleveland, 137 F.3d 905 (6th Cir. 1998).

The Settlement Class further satisfies Rule 23(b)(3)'s requirements of predominance and superiority for settlement purposes. Senter, 532 F.2d at 522; UAW, 497 F.3d at 626. The issues presented are based on alleged uniform policies and practices that apply to all members of the Settlement Class. The common issues predominate over questions affecting all members of the Settlement Class. Named Plaintiff alleges these practices apply to all members of the Settlement Class, making questions of law and fact that are common to the members of the Settlement Class predominate over individualized issues.

In addition, class-wide resolution of this controversy is superior to the alternative of litigating over 1,027 individual suits. General Tel. Co. v. Falcon, 457 U.S. 147, 159 (1982)(class certification advances "the efficiency and economy of litigation which is a principal purpose of the procedure"); Day v. NLO, 851 F.Supp. 869, 883 (S.D. Ohio 1994)(of equal importance "are considerations of the

avoidance of the inequality resulting from piecemeal litigation as well as a concern to provide access to the courts for litigants with limited resources and common claims")

### 2. The Proposed Notice Satisfies Rule 23 and Due Process

Federal Rule of Civil Procedure 23(e) requires the Court to "direct notice in a reasonable manner to all class members who would be bound" by the settlement. Bailey v. White, 320 Fed.Appx. 364 (6th Cir. 2009). The notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." UAW, 497 F.3d at 626, citing, Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950).

Reasonable notice to Settlement Class members is required by due process as well. Fidel v. Farley, 534 F.3d 508, 513 (6th Cir. 2008), citing, DeJulius v. New England Health Care Employees Pension Fund, 429 F.3d 935, 943-944 (10th Cir.2005); Mullane, 339 U.S. at 313; Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 173 (1974). Due process "does not, however, require actual notice to each party intended to be bound by the adjudication of a representative action." Fidel, 534 F.3d at 514 (6th Cir. 2008), citing, DeJulius, 429 F.3d at 944; Mullane, 339 U.S. at 313-14; In re Integra Realty Res., Inc., 262 F.3d 1089, 1110-1111 (10th Cir. 2001); Silber v. Mabon, 18 F.3d 1449, 1453-54 (9th Cir.1994). The issue is not whether all class members received notice, "but whether the class as a whole had notice adequate to flush out whatever objections might reasonably be raised to the settlement." Fidel, 534 F.3d at 514, quoting, Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1375 (9th Cir. 1993).

The "individual notice" requirement of Rule 23(e) and due process is fulfilled by sending written notice to class members by first-class mail, at the addresses shown in the defendant's business records. Grunin v. International House of Pancakes, 513 F.2d 114, 120 (8th Cir. 1975),

cert. denied, 423 U.S. 864 (1975). Such notice is the "best notice practicable" in a class action. Grunin, 513 F.2d at 121; Eisen, 417 U.S. at 175.

In the present case, the proposed Notice satisfies these requirements. Under the terms of the Settlement Agreement, the notice will be sent to the Settlement Class members by first-class mail using the addresses shown in Defendants' records within 24 days of a preliminary approval order. (Settlement Agreement, ¶¶ 26 - 27). The notice informs the Settlement Class members of the claims asserted in the lawsuit, explains the structure of the Settlement, sets forth each individual's anticipated individual settlement payment, and provides them with the ability to seek more information and copies of the settlement documents from the Class Counsel. (See Exhibit 3 to Settlement Agreement). The Notice also informs the Settlement Class members of their rights to opt out of the Settlement or object to it and provides them with an opportunity to do so within 45 days of the mailing of the notice. (Id.). Any notices returned to Plaintiffs' counsel as undeliverable will be skip traced once to obtain a new address to which they shall be re-mailed. (Id. at ¶30). This process is reasonably calculated to apprise the Settlement Class members of the pendency of the settlement and afford them an opportunity to present their objections or opt out of the settlement. See Mitchell v. Independent Home Care, Inc., No. 2:17-cv-717, ECF Nos. 40, PAGEID # 377-78 (S.D. Ohio Feb. 20, 2019) (Vascura, M.J.) and ECF No. 41 (S.D. Ohio Mar. 12, 2019) (Watson, J.) (approving R&R).

**B.  Preliminary Approval of Settlement under Rule 23(e) is Appropriate.**

Under Federal Rule of Civil Procedure 23(e), a class settlement must be "fair, reasonable, and adequate" under a seven-factor standard discussed below. UAW v. General Motors Corp., 497 F.3d 615, 626, citing, Granada Invs., Inc. v. DWG Corp., 962 F.2d 1203, 1205 (6th Cir.1992); Williams v. Vukovich, 720 F.2d 909, 922-923 (6th Cir.1983). The Sixth Circuit has recognized

that "the law generally favors and encourages the settlement of class actions." Franks v. Kroger Co., 649 F.2d 1216, 1224 (6th Cir. 1981). Such actions, by their nature, involve uncertainties of outcome, difficulties of proof, and lengthy litigation, and they readily lend themselves to compromise. 4 Newberg On Class Actions §11.41 (4th ed. 2007). Therefore, when considering the seven factors, the courts apply a "strong presumption" in favor of finding a settlement to be fair. Dail v. George A. Arab, Inc., 391 F.Supp.2d 1142, 1145-1146 (M.D. Fla. 2005), citing, Cotton v. Hinton, 559 F.2d 1326, 1331 (5th Cir. 1977); Sweet v. General Tire & Rubber Co., 1982 WL 278, *5 (N.D. Ohio Mar. 17, 1982).

### 1. The Seven-Factor Standard Is Satisfied

The Sixth Circuit uses seven factors to evaluate class action settlements: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest. UAW, 497 F.3d at 626. And, unlike Rule 23 class certification for purposes of litigation, certification of a Rule 23 class solely for the purposes of settlement does not require the court to engage in an analysis of manageability. Amchem Products, Inc. v. Windsor, 521 U.S. 591, syl. 2(b), 620 (1997)("whether trial would present intractable management problems . . . is not a consideration when settlement-only certification is requested, for the proposal is that there be no trial"). As explained below, the seven-factor standard supports approval of the settlement in this case.

### a. No Indicia of Fraud or Collusion Exists

The Parties reached a settlement in this case following contentious litigation, extensive review and computation of damages, and prolonged settlement negotiations that culminated in a

day-long mediation with an experienced mediator facilitated by this Court. As such, there is no indicia of fraud or collusion.

### b. The Complexity, Expense, and Likely Duration of Continued Litigation Favor Approval

The policy favoring the settlement of class actions and other complex cases applies with particular force here. As this Court observed, "the Court notes that wage and hour class and collective actions, such as this, are inherently complex and time-consuming." Brandenburg v. Cousin Vinny's Pizza, LLC, No. 3:16-CV-516, 2019 WL 6310376, at *3 (S.D. Ohio Nov. 25, 2019) (Rice, J.).

As this Court is aware, this litigation is inherently complex because it involves claims of unpaid overtime damages as to whether or not the time the HHAs spent between patients is compensable, the amount of time they spent between patients, and if the HHAs were entitled to overtime premium pay at all. Virtually every issue in this litigation is contested and the Parties vigorously advocated for their respective positions.

Additionally, the Parties disagree as to whether the two-year limitations period for non-willful violations or a three-year limitations period for willful violations applies under the FLSA. Defendants claims that even if the Plaintiffs succeed on the merits (even though Defendant contends Plaintiffs will not be successful), they cannot prove a willful violation of the law, and thus, only a two-year limitation period would apply under the FLSA. Further, Defendants assert that, because it acted in good faith, no liquidated damages under the FLSA should be awarded even if the Plaintiffs prevail on their claims. Thus, if forced to litigate this case further, the Parties would engage in complex, costly, and protracted litigation. The settlement, on the other hand, provides substantial relief to the Plaintiffs and the settlement class promptly and efficiently, and

amplifies the benefits of that relief through the economies of class-wide resolution. Accordingly, the litigation was difficult and complex and weighs in favor of the settlement.

c. ***The Parties Sufficiently Investigated the Claims and Defenses Asserted***.

The Parties engaged in substantial investigation prior to commencing and throughout this litigation prior to negotiating a potential resolution. The Parties exchanged written discovery and relevant information, including detailed payroll information and other business records of Defendants. In addition, Class Counsel engaged in further independent investigation of the facts, reviewed pay data, performed damages calculations, and conducted additional legal research regarding the claims and defenses in the lawsuits. Thus, the legal issues were thoroughly researched by the Parties and the value of the claims properly assessed.

d. ***The Likelihood of Success on the Merits, as well as the Risks of Litigation and Uncertainty of Recovery, Favor Approval.***

Counsel for both sides believe in the merits of their clients' positions and have vigorously represented their clients' interests throughout the Litigation, but nonetheless recognize that litigation is uncertain in terms of duration, cost, and result. For example, the settlement provides relief to the settlement class members and eliminates the risks that the Parties would otherwise bear if the litigation were to continue on for more years, which favors this factor. See Barnes v. Winking Lizard, Inc., No. 1:18CV952, 2019 WL 1614822, at *3 (N.D. Ohio Mar. 26, 2019) (citing Foster v. Nationwide Mut. Ins. Co., 710 F.3d 640 (6th Cir. 2013) (affirming bench trial verdict that special investigators were properly classified as exempt from the overtime pay requirements of the FLSA).

Absent settlement, the Parties would have engaged in significant discovery, including, but not limited to responses to discovery requests of many, if not all of the Opt-In Plaintiffs, many depositions, discovery-related motion practice, further testimony at any additional hearings, and

16

other motion practice (Rule 23 class certification, FLSA collective decertification, dispositive motions on the merits and damages issues). Further, even if they prevail on the merits, any recovery could be significantly curtailed if a jury concludes that Defendants acted in good faith and Plaintiffs fail to establish a willful violation of the law. Moreover, an appeal could be filed.

On the other hand, Defendants face the prospect of class-wide liability to 87 current and former employees, as well as liquidated damages and attorney's fees following lengthy and expensive litigation. These considerations all support approval of the settlement. Indeed, by agreeing to the settlement, these risks are eliminated, and participating class members are guaranteed to receive an excellent recovery now, rather than possibly receiving a recovery years from now (or not receiving any recovery ever). Barnes, 2019 WL 1614822, at *3; see also Hall v. U.S. Cargo and Courier Service, LLC, 2019 WL 6001198 at *4 (S.D. Ohio Nov. 14, 2019) (Sargus, J) (denying defendant's request for costs following a jury trial in a FLSA collective action).

### e.  The Opinions of Class Counsel and Representative Plaintiffs Favor Approval

The Parties' counsel are experienced in wage-and-hour class and collective actions, have acted in good faith, and have represented their clients' best interests in reaching this Settlement. And, for the reasons set forth above, Class Counsel is of the opinion that the Settlement is a fair, reasonable, and adequate resolution of this Litigation. Likewise, Named Plaintiff agrees that the settlement is fair and reasonable, and she assents to the terms of the Settlement.

### f.  The Reaction of Absent Class Members Will Likely Favor Approval.

Absent class members will not be informed of the Settlement until notice is authorized by the Court. The Settlement Class members will receive substantial relief as a result of the settlement, including monetary relief by way of settlement payments.

17

### g. The Public Interest Favors Approval

Approval of a fair and reasonable agreement promotes the public's interest in encouraging settlement of litigation. Edwards v. City of Mansfield, 2016 U.S. Dist. LEXIS 64159, *10 (N.D. Ohio May 16, 2016); Williams v. K&K Assisted Living LLC, 2016 U.S. Dist. LEXIS 9310, *3 (E.D. Mich. Jan. 27, 2016) (district courts may approve FLSA settlements "in order to promote the policy of encouraging settlement of litigation"), quoting, Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor, Employment Standards Admin., Wage & Hour Div., 679 F.2d 1350, 1354 (11th Cir. 1992). Settlement agreements assure that plaintiffs will receive compensation for the alleged violations at issue. As one district court in this Circuit explained, "the certainty and finality that comes with settlement also weighs in favor of approving a fair and reasonable settlement." Edwards, 2016 U.S. Dist. LEXIS 64159 at *10. The same is true here. The Settlement Agreement promotes public interest by providing fair and efficient payments to the settlement class members, avoiding the continued expenditure of judicial resources on protracted complex litigation, and eliminating the risks that both parties face through the litigation process.

### 2. The Settlement Distributions are Fair, Reasonable, and Adequate.

As part of the scrutiny it applies to a class and collective action settlement, "a court must ensure that the distribution of the settlement proceeds is equitable." Crawford v. Lexington-Fayette Urban County Government, 2008 WL 4724499, *9 (E.D. Ky. Oct. 23, 2008), citing, Ortiz v. Fibreboard Corp., 527 U.S. 815, 855 (1999).

In the present case, the settlement establishes a pool of settlement funds that will be divided among the Settlement Class members who do not opt out of the settlement on a pro rata basis based upon their calculated damages. This ensures an equitable distribution of settlement proceeds that

18

is directly tied to the claims of and harm allegedly suffered by the settlement class members and will provide them with a proportionate share of the settlement funds.

### a. The Individual Payments are Reasonable and Adequate.

With respect to the settlement payments to the Settlement Class members, the individual payments are reasonable. The total Settlement Fund represents approximately 80% of the maximum unliquidated overtime damages calculated by Class Counsel. Defendants dispute the maximum alleged unpaid overtime damages calculated by Class Counsel and instead believe that the total settlement fund exceeds the maximum recoverable damages in the Litigation. Defendants particularly dispute Plaintiffs' claims for unpaid overtime damages based on Plaintiffs' claims that Defendants failed to include the Plaintiffs' time in between patients as part of the Plaintiffs' compensable time.

Although 4of the settlement payments will be at the minimum $50.00 payment, the remaining 83 settlement payments exceed this amount with the highest payment in excess of $1,779.57. (B. Gibson Dec., ¶16). The Settlement Fund and individual settlement payments represent a reasonable and adequate resolution of the settlement class members' overtime claims.

### b. Representative Plaintiffs' Service Awards are Reasonable.

Service awards to representative plaintiffs recognizing the value of their services on behalf of other participants are proper. The Sixth Circuit declared that "numerous courts have authorized incentive awards [as] efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." Hadix v. Johnson, 322 F.3d 895, 897 (6th Cir. 2003); accord Osman v. Grube, Inc., No. 3:16-cv-00802-JJH, 2018 U.S. Dist. LEXIS 78222, at *4-5 (N.D. Ohio May 4, 2018). As stated in In re Dunn & Bradstreet Credit Services Customer Litigation, 130 F.R.D. 366, 373-74 (S.D. Ohio 1990):

> Numerous courts have not hesitated to grant incentive awards to representative plaintiffs who have been able to effect substantial relief for classes they represent. 130 F.R.D. at 373 (citing Wolfson v. Riley, 94 F.R.D. 243 (N.D. Ohio 1981); Bogosian v. Gulf Oil Corp., 621 F. Supp. 27, 32 (E.D. Pa. 1985); In re Minolta Camera Products Antitrust Litigation, 666 F. Supp. 750, 752 (D. Md. 1987)).

In this Circuit, service awards to representative plaintiffs are "typically justified when named plaintiffs expend more time and effort beyond that of other class members in assisting class counsel with litigation, such as by actively reviewing the case and advising counsel in prosecution of case." In re Southern Ohio Correctional Facility, 175 F.R.D. 270, 273-76 (S.D. Ohio 1997). Courts recognize that "differentiation among class representatives based upon the role each played may be proper in given circumstances." Dun & Bradstreet, 130 F.R.D. at 374, citing, In re Jackson Lockdown/MCO Cases, 107 F.R.D. 703, 710 (E.D. Mich. 1985), see also, Enterprise Energy Corp. v. Columbia Gas Transmission Corp., 137 F.R.D. 240, 250 (S.D. Ohio 1991)(among the factors warranting incentive awards are the "time and effort spent" by the individuals in question and "whether these actions resulted in a substantial benefit to Class Members").

As this Court recently echoed, such awards are common in class action settlement and routinely approved for the simple reason: "to compensate [plaintiffs] for the services they provided and the risks they incurred during the course of the class action litigation." Kritzer v. Safelite Solutions, LLC, No. 2:10-cv0729, 2012 WL 1945144 at *8-9 (S.D. Ohio May 30, 2012).

In the present case, Named Plaintiff's participation in this litigation was crucial and the requested payment amount reflects her contributions. Named Plaintiff assisted in providing extensive factual information to Plaintiffs' counsel, faithfully communicating with Plaintiffs' counsel, subjecting herself to the responsibilities of serving as Named Plaintiff, responding to constant questions from Plaintiffs' counsel, attending the mediation, and otherwise providing material information to Plaintiffs' counsel above and beyond normal course. (B Gibson Dec. ¶33).

Named Plaintiff also attached her name to publicly filed lawsuit against an employer that dominates where she lives. Osman, 2018 U.S. Dist. LEXIS 78222, at *5 (citing Sand v. Greenberg, 2011 U.S. Dist. LEXIS 155013, 2011 WL 784602, at *3 (S.D.N.Y. Oct. 6, 2011) (approving award in FLSA case because plaintiffs "took risks by putting their names on this lawsuit," including that of "blacklisting").

For Named Plaintiff's efforts, she is requesting a service payment of $2,500.00. (Settlement Agreement, ¶[23]. The proposed service payment Named Plaintiff request is within the range awarded by district courts in this Circuit and in wage and hour actions in other jurisdictions. See Al-Sabur, et al. v. ADS Alliance Data Systems, Inc., No. 2:18-cv-957, ECF No. 23 (S.D. Ohio Aug. 6, 2019) (Smith, J.) (approving service awards of $12,500 for a representative plaintiff and $2,500 for an Opt-In Plaintiff); Mullins v. S. Ohio Pizza, Inc., No. 1:17-CV-426, 2019 WL 275711, at *6 (S.D. Ohio Jan. 18, 2019) (Dlott, J.) ($10,000 service award for each named plaintiff); Brandenburg v. Cousin Vinny's Pizza, LLC, No. 3:16-CV-516, 2019 WL 6310376, at *8 (S.D. Ohio Nov. 25, 2019) (Rice, J.) ($10,000 service award for each named plaintiff); Arledge v. Domino's Pizza, Inc., No. 3:16-CV-386-WHR, 2018 WL 5023950, at *6 (S.D. Ohio Oct. 17, 2018) (Rice, J.) ($10,000 service award for each named plaintiff); Swigart v. Fifth Third Bank, 2014 WL 3447947 *7 (S.D. Ohio July 11, 2014)(approving "modest class representative award" requests of $10,000 to each of the class representatives in FLSA/Rule 23 hybrid action).

### C. **The Attorney's Fees as Percentage of Common Fund as well as Reimbursement of Costs to Plaintiffs' Counsel Are Proper and Reasonable.**

#### 1. **The Mandatory Provisions of Attorney Fees and Costs under the Ohio Wage Act**

The mandatory prevailing plaintiff's attorney's fees provision of the Ohio Wage Act exist to enable plaintiffs to employ reasonably competent lawyers without cost to themselves if they

prevail, and thereby to help ensure enforcement of the substantive provisions of each Act. As more fully outlined below, Plaintiffs seek approval of the amount agreed upon by the Parties in the Settlement Agreement (one-third of the common settlement fund) for payment in full of Class Counsel's attorneys' fees as well as reimbursement of advanced costs and expenses incurred in the prosecution of the Litigation. In particular, Plaintiffs request a fee award in the amount of $21,617.55 and reimbursement of reasonable expenses incurred in the amount of $1,500 for payment of Class Counsel's costs advanced in this litigation. Defendants do not oppose this request.

### 2. The Common Fund Approach is Appropriate

The United States Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." Boeing C. v. Van Gemert, 444 U.S. 472, 478 (1980). The Sixth Circuit has approved a court's use of the percentage-of-the-fund method to determine a reasonable attorney's fee from a common fund settlement. Rawlings v. Prudential Bache Prop., Inc., 9 F.3d 513, 515–16 (6th Cir. 1993); see also Lonardo v. Travelers Indemnity Co., 706 F. Supp. 2d 766, 790 (N.D. Ohio 2010) (the percentage-of-the-fund method is the "preferred method for common fund cases, where there is a single pool of money and each class member is entitled to a share"); Swigart v. Fifth Third Bank, 2014 WL 3447947 *5 (S.D. Ohio July 11, 2014) (adopting the percentage approach as "the most appropriate method for determining reasonable attorneys' fees" in wage and hour cases). "The percentage of the common fund method has the advantage of establishing reasonable expectations on the part of class counsel as to their expected recovery, and encouraging early settlement before substantial fees and expenses have accumulated." Rotuna v. W. Customer Mgmt. Grp., LLC, No. 4:09CV1608, 2010 U.S. Dist.

LEXIS 58912, at *20 (N.D. Ohio June 15, 2010) (approving fees at one third of common fund). Furthermore, it permits courts to focus on the benefit conferred upon a class or collective rather than the cumbersome task of reviewing complicated and lengthy billing documents. Rawlings, 9 F.3d at 516 ("[T]he lodestar method has been criticized for being too time-consuming of scarce judicial resources."). Further, there are good reasons to prefer using the percentage of the fund method. See In re Cardinal Health Inc. Sec. Litigations, 528 F. Supp. 2d 752, 761–62 (S.D. Ohio 2007) (providing an excellent discussion on the subject). In these scenarios, there are many good reasons to prefer using the percentage of the fund method because it encourages efficiency, judicial economy, and aligns the interests of lawyers with the class. In re Cardinal Health Inc. Sec. Litigations, 528 F. Supp. 2d 752, 761–62 (S.D. Ohio 2007).

Plaintiffs' request for attorneys' fees equal to one-third of the common fund is particularly reasonable in this case when compared to the lodestar amount. The lodestar amount of attorneys' fees is calculated by multiplying reasonable hourly rates by the hours the attorneys reasonably worked. See Bailey v. AK Steel Corp., 2008 U.S. Dist. LEXIS 18838, *6 (S.D. Ohio, Feb. 28, 2008). Here, the lodestar amount is $54,000.00, which is actually more than the common fund amount as of the date of this filing, which does not include the additional time Plaintiffs' counsel will spend on this matter.[3]

### 3. Courts in the Sixth Circuit Regularly Approve that 1/3 of the Common Fund is a Reasonable Attorney Fee Award.

One-third of the settlement fund is a "normal [attorney] fee amount in a wage and hour case." Brandenburg v. Cousin Vinny's Pizza, LLC, No. 3:16-CV-516, 2019 WL 6310376, at *5

---

[3] The reasonable attorneys' fees amount for Plaintiffs' counsel, Bradley L. Gibson, is $350.00. That amount is reasonable given his of experience practicing wage-and-hour litigation and has been approved by this Court for other attorneys with similar years of experience. (See A. Gibson Dec., ¶23).

23

(S.D. Ohio Nov. 25, 2019) (Rice, J.) (approving as reasonable 1/3 for attorney's fees from a common fund of $1,140,000); Arledge v. Domino's Pizza, Inc., No. 3:16-CV-386-WHR, 2018 WL 5023950, at *4 (S.D. Ohio Oct. 17, 2018) (Rice, J.) (observing collective cases that attorney fee awards "typically range from 20 to 50 percent of the common fund"); Osman, 2018 U.S. Dist. LEXIS 78222, at *6 (citations omitted) ("one-third of the common fund is a reasonable attorneys' fee award 'and has been approved in similar FLSA collective actions in this judicial district.'"). Indeed, following the common fund approach, this Court recently approved 1/3 of the common fund for the same counsel. See Al-Sabur, et al. v. ADS Alliance Data Systems, Inc., No. 2:18-cv957, ECF No. 23 (S.D. Ohio Aug. 6, 2019) (Smith, J.) (approving as reasonable 1/3 of the common fund of $525,000 for attorney fees); Walton, et al. v. Oldcastle BuildingEnvelope, Inc., No. 3:18- cv-2936, ECF No. 44 (N.D. Ohio Mar. 2, 2020) (Carr, J.) (approving as reasonable 1/3 of a total common fund of $775,000 for attorney fees); see also Swigart, 2014 WL 3447947 *7 ("An award of 33% of the total settlement fund" – before additional payment for expenses – "is well within the range of fees requested in class and collective actions in Ohio federal district courts. [Cit.]; Kritzer, 2012 U.S. Dist. LEXIS 74994, 2012 WL 1945144, at *9-10 (awarding attorney's fees and costs up to $235,000 out of a settlement of $455,000 (52% of total recovery) in a hybrid FLSA collective and Ohio class action for unpaid overtime)."); Bessey v. Packerland Plainwell, Inc. 2007 WL 3173972 (W.D. Mich. 2007) (approving a one-third attorneys' fee award in an FLSA settlement); Rotuna v. W. Customer Mgmt. Grp., LLC, No. 4:09-CV-1608, 2010 U.S. Dist. LEXIS 58912, 2010 WL 2490989, at *7 (N.D. Ohio June 15, 2010) (approving one-third of the common fund as attorneys' fees). Accord Dillworth v. Case Farms Processing, Inc., 5:08CV1694, 2009 U.S. Dist. LEXIS 76947 (N.D. Ohio 2009); Jackson v. Papa John's, Case No. 1:08-CV-2791, 2008 U.S. Dist. LEXIS 107650 (N.D. Ohio 2008); Fincham v. Nestle Prepared Foods Co., 1:08-CV-73 (N.D.

Ohio 2008); McGhee v. Allied Waste Indus., Case No. 1:07-CV-1110 (N.D. Ohio 2007)); In re Revco Securities Litigation, Fed. Sec. L. Rptr. ¶ 96,956, at 94,069 (N.D. Ohio 1993); Hebert v. Chesapeake Operating, Inc., 2019 WL 4574509, Case No. 2:17-cv-852, *8 (S.D. Ohio Sept. 20, 2019) ("33% is typical for attorney's fees in common fund, FLSA collective actions in this District…").

As a result, the proper measure when analyzing a percentage of the fund award is to take the attorney's fees "as the numerator and the denominator is the total dollar figure of the Total Benefit to the class (which includes the 'benefit to class members,' the attorney's fees and may include costs of administration)." Rikos, 2018 WL 2009681 at *8, quoting Gascho v. Glob Fitness Holdings, LLC, 822 F.3d 269, 282 (6th Cir. 2016).

In this case, under Gascho, the correct measure is: \$21,617.50/\$65,000.00 = 33.33% fee award. As noted above, a 33.33% award for attorney fees is well within the range courts in this district (and others) have found to be reasonable. See Rikos, 2018 WL 2009681 at *9. For these reasons, Plaintiffs respectfully request an award of \$21,617.50 in attorney's fees and \$1,500.00 in expenses incurred in this litigation. Defendants do not oppose this request. Accordingly, Plaintiffs respectfully request that the Court to approve the settlement.

## IV. CONCLUSION

For the reasons set forth above, the Parties respectfully request that the Court enter an Order as follows:

1. Preliminarily approving the Settlement as fair, reasonable, and adequate under Fed. R. Civ. P. 23(e);

2. Granting certification pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) of a settlement Class as defined herein;

3. Appointing Bradly L. Gibson of Gibson Law, LLC, as class counsel pursuant to Fed. R. Civ. P. 23(g);

4. Approving the form, content, and manner of the Notice to the proposed settlement class; and

5. Setting a final approval hearing on a schedule consistent with the Parties' settlement Agreement and the Court's calendar.

| **TAFT STETTINIUS & HOLLISTER, LLP** | **GIBSON LAW, LLC** |
|---|---|
| By: /s/ Timothy G. Pepper (email authority) | By: /s/ Bradley L. Gibson |
| Timothy G. Pepper, Trial Attorney | Bradley L. Gibson (0085196) |
| TAFT STETTINIUS & HOLLISTER LLP | Gibson Law, LLC |
| 40 N. Main Street, Suite 1700 | 9200 Montgomery Road |
| Dayton, Ohio 45423 | Suite 11A |
| Telephone: (937) 641-1740 | Cincinnati, OH 45242 |
| Facsimile: (937) 228-2816 | Telephone: (513) 834-8254 |
| pepper@taftlaw.com | Facsimile: (513) 834-8253 |
|  | brad@gibsonemploymentlaw.com |
| *Attorney for Defendants* |  |
|  | *Attorney for Plaintiff Kara Brown and all Opt-in Plaintiffs* |

## CERTIFICATE OF SERVICE

I, Bradley L. Gibson, hereby certify that, on this date, I caused the foregoing document to be filed electronically with this Court, where it is available for viewing and downloading from the Court's ECF system, and that such electronic filing automatically generates a Notice of Electronic Filing constituting service of the filed document, upon the following:

Timothy G. Pepper
pepper@taftlaw.com

/s/ Bradley L. Gibson_____
Bradley L. Gibson (0085196)

27